IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-597-D

| | |
|---|---|
| ANGELA MILES-STEPHENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| NORTH CAROLINA DEPARTMENT ) | |
| OF CORRECTIONS, ) | |
| ) | |
| Defendant. ) | |

On October 26, 2011, Angela Miles-Stephens ("Miles-Stephens" or "plaintiff") sued the North Carolina Department of Corrections ("NCDOC" or "defendant") alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. See Compl. [D.E. 1].[1] Miles-Stephens (who is an African-American woman) alleges that she applied for 21 positions with the NCDOC between February 6, 2010, and December 22, 2010, but that the NCDOC did not hire her due to her race. See Compl. (count one). Miles-Stephens also alleges that the NCDOC did not hire her in retaliation for an EEOC charge that she filed concerning the NCDOC in 2006 and settled in February 2007. See id. (count two).

On November 12, 2013, the NCDOC filed a motion for summary judgment. See [D.E. 29]. On January 6, 2014, Miles-Stephens responded in opposition. See [D.E. 32]. As explained below, the court grants the NCDOC's motion for summary judgment.

---

[1] The NCDOC is now called the North Carolina Department of Public Safety.

I.

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the plaintiff and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must initially come forward and demonstrate an absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Likewise, a "mere . . . scintilla of evidence in support of the [nonmoving party's] position [will not suffice]; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252; see Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

A.

First, the NCDOC argues that this court lacks subject-matter jurisdiction over Miles-Stephens's Title VII claims. See [D.E. 30] 7–9. In support, the NCDOC relies on 42 U.S.C.

2

§ 2000e-5(c) and Davis v. North Carolina Department of Correction, 48 F.3d 134, 137–38 (4th Cir. 1995). Section 2000e-5(c) states:

> In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice . . . , no charge may be filed under subsection (a) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.

42 U.S.C. § 2000e-5(c). In Davis, the Fourth Circuit construed section 2000e-5(c) and held that:

> where state law protects persons against the kind of discrimination alleged, complainants <u>are required to resort to state and local remedies before they may proceed to the EEOC</u>, and then to federal court, on their claims of discrimination under federal law. <u>This requirement is rooted in a policy of cooperation between the federal government and the states, and is designed to give state agencies a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary, resort to federal relief by victims of discrimination.</u> Section 2000e-5(c) has resulted in EEOC's development of a referral and deferral system in which the EEOC delays processing [discrimination] claim[s] while the complainant <u>first proceeds under state law in a state forum.</u>

Id. at 137 (emphasis added) (citations and quotations omitted). When Davis applies and a plaintiff has failed first to resort to state remedies under state law in a state forum, a district court lacks subject-matter jurisdiction over an ensuing Title VII claim. See id. at 137–40; Greene v. Swain Cnty. P'ship for Health, 342 F. Supp. 2d 442, 447–49 (W.D.N.C. 2004); Metts v. N.C. Dep't of Revenue, No. 7:99-CV-131-BR(2), 2000 WL 1517726, at *2–4 (E.D.N.C. Jan. 5, 2000) (unpublished); Henderson v. Emp't Sec. Comm'n of N.C., 910 F. Supp. 252, 253–55 (W.D.N.C.

3

1995).

Under North Carolina law, Miles-Stephens could have sought relief for alleged race discrimination and unlawful retaliation in the North Carolina Office of Administrative Hearings. See, e.g., N.C. Gen. Stat. §§ 126-34.1(b)(3), 126-36 (repealed 2013) (current version at N.C. Gen. Stat. § 126-34.02(a), (b)(1)–(2)); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 539, 543 (E.D.N.C. 2008). Moreover, upon finding race discrimination or retaliation, the Office of Administrative Hearing could "order the employment ... of any individual." N.C. Gen. Stat. § 126-37(a) (repealed 2013) (current version at N.C. Gen. Stat. § 126-34.02(a)(2)); Wright v. Blue Ridge Area Auth., 134 N.C. App. 668, 668–76, 518 S.E.2d 772, 773–77 (1999). As in Davis, Greene, Metts, and Henderson, Miles-Stephens was required first to pursue her case concerning alleged race discrimination and retaliation in the Office of Administrative Hearings. Because Miles-Stephens failed to do so, this court lacks subject-matter jurisdiction over her Title VII claims. See, e.g., Davis, 48 F.3d at 137–40; Greene, 342 F. Supp. 2d at 447–49; Metts, 2000 WL 1517726, at *2–4; Henderson, 910 F. Supp. at 253–55. Thus, the court grants summary judgment to the NCDOC, and dismisses Miles-Stephens's Title VII claims for lack of subject-matter jurisdiction.

Alternatively, even if this court had subject-matter jurisdiction over Miles-Stephens's Title VII claims, the court would still grant summary judgment to the NCDOC. As for Miles-Stephens's Title VII race-discrimination claim, Miles-Stephens does not have any direct evidence of race discrimination. Instead, she proceeds under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which "established an allocation of the burden of production and an order for the presentation of proof in ... discriminatory-treatment cases." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). Under McDonnell Douglas, the plaintiff first must establish a prima facie case

4

of discrimination. See id.; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the defendant took adverse employment action "for a legitimate, nondiscriminatory reason." Burdine, 450 U.S. at 254. This burden is one of production, not persuasion. St. Mary's Honor Ctr., 509 U.S. at 509. If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc) (quotation omitted); see, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Burdine, 450 U.S. at 256; King v. Rumsfeld, 328 F.3d 145, 150–54 (4th Cir. 2003). A plaintiff can demonstrate pretext by showing that the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 603–04 (E.D.N.C. 2006).

In order to establish a prima facie case of failure to hire based on race, Miles-Stephens must show that (1) she belongs to a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position remained open and the employer continued to seek applicants from persons of her qualifications. See, e.g., EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 (4th Cir. 2001); Brown v. McLean, 159 F.3d 898, 902–04 (4th Cir. 1998).

Miles-Stephens asserts that she applied for 21 positions with the NCDOC between February 6, 2010, and December 22, 2010, but she fails to identify 19 of the positions with particularity. The

5

only position Miles-Stephens identifies with particularity is the clinical social worker position in Hoke County, for which Miles-Stephens applied twice.[2] Where a plaintiff fails to identify the specific job for which she applied, her qualifications for that job, and the circumstances giving rise to an inference of race discrimination, a plaintiff fails to establish a prima facie case. See, e.g., Brown, 159 F.3d at 903–04. Thus, the court grants summary judgment to the NCDOC as to all applications except for the two that Miles-Stephens submitted for the clinical social worker position in Hoke County.

As for the two times that Miles-Stephens sought the clinical social worker position in Hoke County, the court assumes without deciding that Miles-Stephens has established a prima facie case. In turn, the NCDOC has articulated a legitimate non-discriminatory reason for not selecting her: she was not the most qualified applicant. See [D.E. 30-3, 30-4]; cf. Evans, 80 F.3d at 960 (employer's good-faith belief that another candidate is better qualified is a legitimate non-discriminatory reason). Thus, the issue becomes whether Miles-Stephens has raised a genuine issue of material fact as to pretext.

A plaintiff can demonstrate pretext by showing that the alleged non-discriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence

---

[2] On April 30, 2010, Miles-Stephens submitted her first application for the clinical social worker position in Hoke County. See Compl. 4; [D.E. 30-4] 39–44. On May 18, 2010, a panel of three people (including an African-American woman) interviewed Miles-Stephens and one other candidate for the position. See [D.E. 30-4] 10. The NCDOC offered the job to the other applicant, who declined the offer. See id. ¶ 4; 38 (rejection letter dated May 24, 2010). The NCDOC then reposted the position. On June 9, 2010, Miles-Stephens reapplied. See Compl. 4; [D.E. 30-4] 108–114. On July 22, 2010, another panel of three people (composed of two of the same individuals who previously interviewed Miles-Stephens, and a different African-American woman) interviewed Miles-Stephens and two other candidates for the position. See [D.E. 30-4] 94, 96. The NCDOC offered the job to another applicant, who accepted the offer. See id. ¶ 5; 107 (rejection letter dated July 26, 2010).

6

sufficiently probative of [race] discrimination." Mereish, 359 F.3d at 336 (quotation omitted). In analyzing pretext, the court does not sit to decide whether the defendant in fact discriminated against the plaintiff on the basis of race. See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279–80 (4th Cir. 2000). Rather, the court focuses on whether the plaintiff has raised a genuine issue of material fact as to pretext within the meaning of Reeves and its Fourth Circuit progeny.

Miles-Stephens has failed to raise a genuine issue of material fact concerning pretext. Lynn Summers was the hiring manager for the clinical social worker position. See [D.E. 30-4] ¶ 3. In accordance with NCDOC policy, the NCDOC established a three-person interview panel. Id. ¶ 4. Summers was not on the panel. Id. The panel interviewed Miles-Stephens, but recommended a candidate for the position that the panel believed was better qualified. Id. Summers agreed with the recommendation. Id. The candidate, however, declined the job offer. Id. The NCDOC then reposted the position and had another three-person interview panel conduct interviews. Id. ¶ 5. The panel again interviewed Miles-Stephens, but recommended a different candidate as the most qualified candidate. Id. Summers approved the recommendation, and the other candidate was hired. Id.

In support of its motion for summary judgement, the NCDOC attached copies of the relevant employment and interview documents concerning the clinical social worker position. See id. ¶ 7 & Ex. A. Nothing in these records suggests race discrimination. See id. Miles-Stephens's speculation about pretext is not enough. See, e.g., Holland, 487 F.3d at 216–18; Price v. Thompson, 380 F.3d 209, 215–17 (4th Cir. 2004); Mereish, 359 F.3d at 336–39; Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 444 (4th Cir. 1998). Likewise, Miles-Stephens's perception of her own experience,

7

performance, and skills is not relevant. It is the perception of the decisionmaker that counts. See, e.g., King, 328 F.3d at 149; Hawkins, 203 F.3d at 280; Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); McDougal-Wilson, 427 F. Supp. 2d at 607. Finally, the court rejects Miles-Stephens's argument that Title VII prohibited the NCDOC from considering a candidate's interview performance as part of the decisionmaking process concerning the clinical social worker position. See, e.g., Torgerson v. City of Rochester, 643 F.3d 1031, 1049 (8th Cir. 2011) (en banc); Turner v. Pub. Serv. Co. of Colo., 563 F.3d 1136, 1145–46 (10th Cir. 2009); Briggs v. Potter, 463 F.3d 507, 516 (6th Cir. 2006); Mallory v. Booth Refrigeration Supply Co., 882 F.2d 908, 910 (4th Cir. 1989); Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 438 (E.D.N.C. 2012). Interview performance was relevant to the position, and the NCDOC properly considered it. See, e.g., Amirmokri v. Balt. Gas & Elec. Co., 60 F.3d 1126, 1130 (4th Cir. 1995); Mallory, 882 F.2d at 910–11; Holley, 846 F. Supp. 2d at 438. Thus, Miles-Stephens's Title VII race-discrimination claim fails.

As for Miles-Stephens's Title VII retaliation claim, she has no direct evidence of retaliation. Instead, she relies on the McDonnell Douglas framework. Under McDonnell Douglas, a plaintiff first must establish a prima facie case of retaliation. See, e.g., St. Mary's Honor Ctr., 509 U.S. at 506; Burdine, 450 U.S. at 252–55; Holland, 487 F.3d at 218; Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001). To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) her employer took an action against her that a reasonable employee would find materially adverse; and, (3) the employer took the materially adverse employment action because of the protected activity. See, e.g., Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2524–33 (2013); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67–70 (2006); Holland, 487 F.3d at 218; Price, 380 F.3d at 212; Bryant v. Aiken Reg'l Med.

8

Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003); Spriggs, 242 F.3d at 190. An adverse employment action includes "a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." Holland, 487 F.3d at 219 (alteration in original) (quotation omitted).

The NCDOC concedes that Miles-Stephens engaged in protected activity in 2006 when she filed an EEOC charge concerning the NCDOC. The NCDOC also concedes that not being hired as a clinical social worker in 2010 constitutes an adverse employment action. The dispute about Miles-Stephens's prima facie case turns on whether there is a genuine issue of material fact about whether the NCDOC took the materially adverse employment actions in 2010 because of Miles-Stephens's protected activity in 2006.

"[A] casual connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." Price, 380 F.3d at 213. Generally, unless the temporal proximity between an employer's knowledge of protected activity and an adverse employment action is "very close," an employee will not be able to prove the causal-nexus requirement. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) (quotation omitted) (suggesting that three-to-four-month gap between protected activity and adverse employment action is insufficient for purposes of proving causation element of prima facie case); King, 328 F.3d at 151 (two-month gap between protected activity and adverse employment action sufficient to show causation element of prima facie case); Tinsley, 155 F.3d at 443 (4th Cir. 1998) (fourteen years is "far too long" to satisfy causal-nexus requirement of prima facie case); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("lengthy time lapse" between protected activity and adverse employment action negates any inference of causation). Nonetheless, even where temporal

9

proximity is lacking, a plaintiff may present evidence of other retaliatory conduct and animus directed at plaintiff in the period between the protected activity and the retaliatory conduct at issue in the case in order to meet the causal-nexus requirement of the prima facie case. See, e.g, Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007).

Miles-Stephens has failed to raise a genuine issue of material fact as to the causal-nexus requirement of the prima facie case. The time lapse is too great, and there is no other evidence of retaliatory conduct directed at Miles-Stephens. Thus, Miles-Stephens has failed to establish a prima facie case of retaliation, and her retaliation claim fails.

Alternatively, even if Miles-Stephens did establish a prima facie case of retaliation, the NCDOC articulated a legitimate non-discriminatory reason for not hiring Miles-Stephens for the clinical social worker position. She was not the most qualified applicant. See [D.E. 30-4] ¶¶ 4–7 & Ex. A; see also [D.E. 30-3]; cf. Evans, 80 F.3d at 960. Thus, the court analyzes whether Miles-Stephens has raised a genuine issue of material fact concerning pretext.

In attempting to raise a genuine issue of material fact concerning pretext, Miles-Stephens argues that Lynn Summers and Laura Yates knew about her 2006 EEOC charge, and that their knowledge and continued presence at NCDOC raises a genuine issue of material fact about pretext. See [D.E. 32] 10–11. However, knowledge of protected activity is necessary, but not sufficient to prove causation. See, e.g., Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998); Gibson v. Old Town Trolley Tours of Wash., D.C., Inc., 160 F.3d 177, 181–82 (4th Cir. 1998); Dowe, 145 F.3d at 657. Furthermore, Miles-Stephens has not presented any evidence that Yates was on either interview panel or was responsible for the decision not to hire her as a clinical social worker. Indeed, the admissible evidence shows the opposite. See [D.E. 30-4] ¶¶ 3–7 & Ex. A. Thus, Yates is irrelevant.

10

As for Summers, he denies knowing about the 2006 EEOC charge, and no admissible evidence suggests that Summers knew about the 2006 EEOC charge. See id. Thus, the retaliation claim fails. See Clark Cnty. Sch. Dist., 532 U.S. at 273; Gibson, 160 F.3d at 181–82; Tinsley, 155 F.3d at 444. Alternatively, even if Summers did know about the 2006 EEOC charge, Miles-Stephens has failed to raise a genuine issue of material fact concerning pretext. See [D.E. 30-3, 30-4]. No rational jury could find that Miles-Stephens's 2006 EEOC charge was the "but for" cause of the NCDOC's failure to hire her as a clinical social worker in 2010. See, e.g., Nassar, 133 S. Ct. at 2524–33; Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011); Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland, 487 F.3d at 218; Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 551 (4th Cir. 2006); Price, 380 F.3d at 215–17; Mereish, 359 F.3d at 336–39; Tinsley, 155 F.3d at 444; Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994). In sum, if the court has subject-matter jurisdiction over Miles-Stephens's Title VII claims, the court grants summary judgment to the NCDOC on Miles-Stephens's Title VII claims.

B.

As for Miles-Stephens's claims of race discrimination and retaliation under 42 U.S.C. § 1981, she may not obtain relief from the NCDOC under 42 U.S.C. § 1981. A claim under 42 U.S.C. § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989); accord Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 & n.1 (4th Cir. 1995); Mason v. N.C. Dep't of Corr., No. 5:12-CV-382-BO, 2014 WL 1411056 (E.D.N.C. Apr. 11, 2014) (unpublished); Courtney v. N.C. Dep't of Transp., No. 1:09CV680, 2010 WL 4923344, at *5 (M.D.N.C. Nov. 29, 2010) (unpublished); Sasser v. City of Whiteville, No. 7:10-CV-95-D, 2010 WL

11

4809039, at *2 (E.D.N.C. Nov. 18, 2010) (unpublished); Roberson v. City of Goldsboro, 564 F. Supp. 2d 526, 528–29 (E.D.N.C. 2008). Thus, the court grants summary judgment to the NCDOC on Miles-Stephens's section 1981 claims.

C.

As for Miles-Stephens's race-discrimination and retaliation claims under 42 U.S.C. § 1983 against the NCDOC, the Eleventh Amendment bars her from pursuing these claims for damages against the NCDOC. See, e.g., Howlett v. Rose, 496 U.S. 356, 365 (1990); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); S.C. State Bd. of Dentistry v. FTC, 455 F.3d 436, 446–47 (4th Cir. 2006); Brown v. N.C. Div. of Motor Vehicles, 166 F.3d 698, 705 (4th Cir. 1999); Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1138 (4th Cir. 1990). Thus, the court grants summary judgment to the NCDOC on Miles-Stephens's claims under 42 U.S.C. § 1983.[3]

II.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 29]. The clerk shall close the case.

SO ORDERED. This 7 day of July 2014.

James Dever
JAMES C. DEVER III
Chief United States District Judge

---

[3] The Eleventh Amendment does not bar Miles-Stephens from pursuing a Title VII claim for damages against the NCDOC. See, e.g., Fitzpatrick v. Bitzer, 427 U.S. 445, 447–48 (1976) (holding that when Congress amended Title VII in 1972 pursuant to section 5 of the Fourteenth Amendment and permitted state governments to be liable for damages under Title VII, Congress properly abrogated the Eleventh Amendment immunity of the states). Nonetheless, as explained, this court lacks subject-matter jurisdiction over plaintiff's Title VII claims. Alternatively, if the court has jurisdiction over those Title VII claims, the claims fail on the merits.

12